# Lindway, Appellant, v. Pennsylvania Co.

*Workmen's compensation — Interstate commerce — Federal or state act—Storing oil in railroad reservoir tank—Burden of proof.*

1. In determining whether liability for the death or injury of a workman is covered by the Federal Employer's Liability Act, or the Workmen's Compensation Act of Pennsylvania, the State courts must accept the decisions of the Supreme Court of the United States as their guide.

2. A distinction seems to prevail in the federal courts between accidents happening to one while working on or with things which are in actual common use as instrumentalities of both interstate and intrastate commerce, and those occurring to persons while employed or working on things being put in position for such common use in the future.

3. The state compensation act and not the federal act, applies to a case where a workman employed by a railroad company is killed while attempting to open a valve on the top of an oil tank car, so that the oil may be run into a reservoir tank of the company, later to be distributed (although not, as far as it appears, by deceased) in filling lamps and torches for use on trains engaged in both kinds of commerce.

4. In such case, where it appears that an effort was made to ascertain whether the tank car brought oil from points within or without the State, and a witness for the railroad testified that he did not know, and that all the records were burned, the testimony of such witness makes against defendant, who carries the burden of proof.

Argued October 6, 1920. Appeal, No. 130, Oet T., 1920, by plaintiff, from judgment of C. P. Beaver Co., Sept. T., 1919, No. 396, sustaining decision of Workmen's Compensation Board sustaining award of referee disallowing claim in case of Elizabeth Lindway v. Pennsylvania Company. Before Brown, C. J., Stewart, Moschzisker, Frazer, Walling, Simpson and Kephart, JJ. Reversed.

Appeal from decision of Workmen's Compensation Board. Before Baldwin, P. J.

The opinion of the Supreme Court states the facts.

The court entered judgment sustaining the decision of the board. Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*F. G. Moorhead,* with him *John G. Marshall,* for appellant, cited: Hench v. R. R., 246 Pa. 1.

*Wm. A. McConnell,* for appellee, cited: Waina v. R. R., 251 Pa. 213; Pedersen v. Ry., 229 U. S. 146; New York Cent. R. R. v. Winfield, 244 U. S. 147.

Opinion by Mr. Justice Moschzisker, December 31, 1920:

Elizabeth Lindway, widow of John Lindway, who was killed while in the employ of defendant railroad company, presented a claim for compensation to the proper authorities. The referee disallowed the claim, on the ground that John Lindway was engaged in interstate commerce at the time of the accident which caused his death. This decision was affirmed by the Workmen's Compensation Board, and again by the Court of Common Pleas; whereupon claimant entered the present appeal.

The material findings of the referee are as follows: (1) John Lindway was employed by defendant company as an oil distributor at its yards located in Freedom,

this State.   (2) He was killed during the course of his employment on November 13, 1917.   (3) "The defendant is a railroad company, whose lines extend from a point in Pittsburgh, Pa., to points in Ohio; it does both an interstate and intrastate business, and deceased, at the time he sustained the injury which resulted in his death, was attempting to open a valve on the top of an oil tank car, so that the oil in the tank could be run into the reservoir tank of the defendant company, later to be used by the defendant company in supplying oil for filling lamps, torches, etc., for the engines and cabooses of the defendant company's trains, both interstate and intrastate indiscriminately; the furnishing of oil for the lamps and torches was necessary to the proper transportation of the trains of the defendant company."   (4) At the time of his death, Lindway was "engaged in work necessary to carry on the interstate commerce of the defendant company."

On these findings the referee concluded: "The defendant being a railroad company, engaged in carrying both interstate and intrastate commerce, and the deceased at the time of his death having been engaged in work necessary to the carrying on of interstate commerce by the defendant company, the deceased was therefore engaged in interstate commerce, and the liability of the defendant company, if any, is covered by the provisions of the Federal Employer's Liability Act; the Workmen's Compensation Act of Pennsylvania does not apply."

It is evident from this record that each of the tribunals which have passed upon the case reached the ultimate conclusions of fact and law—that deceased was engaged in interstate commerce when killed—on the theory that he was then doing an act necessary to the maintenance of that character of traffic, according to the mode in which it was being carried on by defendant agency; and that, in this sense, Lindway was working on an instrument of interstate commerce, when about to handle the oil, at the time of the fatal accident.   Hence

they all decided that his widow must depend on the federal law for relief.

Thus the question is presented: Do the underlying facts found by the referee, when judged in the light of the governing authorities, warrant the ultimate conclusion reached?

In the class of cases represented by the one now before us we must accept the decisions of the Supreme Court of the United States as our guide. The latest utterance from that tribunal, on this branch of the law, dealing with facts which at all approximate those at bar, is Chicago, B. & Q. R. R. Co. v. Harrington, 241 U. S. 177, 179; there a member of a switching crew was killed while engaged in switching a car of defendant's coal to a shed, where the coal was to be stored, for the purpose of supplying, "as needed," locomotives "engaged or about to be engaged in interstate and...... intrastate traffic." Justice HUGHES, in deciding that, under these circumstances, the deceased was not engaged in interstate commerce, states: "The only ground for invoking the federal act is that the coal thus placed was to be used by locomotives in interstate hauls"; after which, he said that the work in question "was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use," and that this was not "so closely related" to interstate commerce "as to be practically a part of it," which he stated is the test.

It will be noted that, in the matter above quoted, Justice HUGHES expressly says that the "only" ground for invoking the federal act was that the article being handled was intended for interstate traffic. In view of this specific statement, the sole distinction which we can see between the above case and the one now before us, is that in the present instance claimant's husband was killed when engaged in storing oil, which was to be subsequently used in both interstate and intrastate commerce, while in the case cited the person affected

met his death when engaged in storing coal for like uses. Of course, this is a distinction without a difference, so far as the question of law here involved is concerned; therefore, the ruling authorities govern the facts at bar in favor of appellant.

The United States Supreme Court decisions seem to distinguish between accidents happening to one while working on, or with, things which are in actual common use as instrumentalities of both interstate and intrastate commerce (see Waina v. Pa. Co., 251 Pa. 213; Pedersen v. Delaware, L. & W. R. R. Co., 229 U. S. 146) and those occurring to persons while employed or working on things then being put in position for such common use in the future (see Harrington case, supra, and Raymond v. C., M. & St. Paul R. R. Co., 243 U. S. 43; New York Cent. R. R. v. White, 243 U. S. 188. As already indicated, we think the latter class of authorities must be accepted as our guide in the present instance, and under them the judgment appealed from is wrong.

Where one, at the time of his injury, is employed on "instruments" or "facilities" which are, by him, being then "kept in readiness for use" in both kinds of commerce (Erie R. R. v. Collins, 253 U. S. 77, 85), as distinguished from being put in position for such use in the future, his case seems to fall within the interstate traffic class. Although the line between the two classes is a narrow one, our understanding of the recent decisions of the United States Supreme Court, as previously said, brings the present case within the principle of the authorities last cited in the preceding paragraph, particularly C., B. & Q. R. R. Co. v. Harrington.

In Erie R. R. Co. v. Szary, 253 U. S. 86, 89, 90, the employee was injured almost immediately after sanding certain interstate locomotives; and the Supreme Court said that, while some of the injured man's duties may not have been directly connected with interstate traffic, yet, under the circumstances of the case, "the acts of service were too intimately related and too necessary for

the final purpose to be distinguished in legal character." It is true that Mr. Justice McKenna, in the course of his opinion, refers to the fact that one of Szary's duties was to prepare sand for use on locomotives; but this so called "preparation" might well be classed as part of the use of the article, rather than preparation in the sense of putting it in position for future use, as in the present case. Then, moreover, as previously shown, Szary was not injured while drying sand, but in returning to the sand house after having worked on interstate locomotives.

To return to the case at bar: as to the duties of the injured man, the court below, in its opinion, states them more broadly than either the findings of the compensation authorities or the evidence warrants. Deceased had charge of the tank and his duty required him to see that oil was placed in it; but, so far as appears, he did not distribute the contents thereof—his duty required only that he keep records showing "where [the oil] went" and "who took it."

One other matter may be referred to. The evidence does not disclose, and there is no finding, whether the tank car brought oil from points within or without the State of Pennsylvania. When an effort was made to ascertain this fact, defendant's witness said he did not know, and, upon inquiry as to whether or not the records of the railroad would show it, he said that all such records had been burned up; which answer, of course, made against defendant, who carried the burden of proof: Hall v. Penna. R. R. Co., 257 Pa. 54, 64.

The assignments of error are sustained, the judgment is reversed, and the record is remitted to the court below with directions to return it to the compensation authorities, so that they may proceed to adjudicate the case in accordance with the law as expressed in this opinion.