JOSEPH H. BARNES *v.* THOMAS A. MYERS.

[No. 58, April Term, 1932.]

*Decided June 22nd, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Daniel B. Leonard,* with whom were *Bowie & Burke* on the brief, for the appellant.

*G. Ridgely Sappington* and *D. Heyward Hamilton, Jr.,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

The principal question is whether upon evidence taken in this case the appellant might be found by a jury to have been an employee of Thomas A. Myers & Company, at the time of an injury sustained by him, and to have been entitled as such to compensation from the appellees under the Workmen's Compensation Act, Code, art. 101, as amended. Barnes, the claimant to compensation, was an inspector of lumber, and while on a pile unloaded by stevedores, and inspecting it for Thomas A. Myers & Company, who are dealers in lumber, he was injured and temporarily disabled by a fall caused by a parting of the pile. The State Industrial Accident Commission first disallowed the claim, on the ground that he was not an employee, but, after a rehearing at which evidence was taken, and allowance of a similar claim was shown to have been made by the commission in 1925, compensation was awarded. On appeal the Court of Common Pleas of Baltimore City directed a jury sworn to try questions of fact to render a verdict that Barnes was not an employee, and so was not entitled to the compensation; and this further appeal is from the judgment entered on that verdict.

Thomas A. Myers & Company were members of an association of lumber dealers known as the Lumber Exchange of Baltimore City. The exchange was not a profit-making association, but only a convenience or agency of the dealers, the expenses of which were paid by contributions from the members. It maintained a bureau, which selected and licensed skilled inspectors of lumber, to be provided for inspection as the members might require it, and it fixed the rate of charges

to be made by inspectors for the work. Barnes, who had been a lumber inspector for about forty-five years, was one of these licensed inspectors called or furnished by the bureau. The regular practice was that, when a member dealer needed an inspector, it would call upon the bureau to provide him, the manager of the bureau would call the inspector next in order on its list and send him to the dealer, and the dealer would give the inspector instructions for his work. The inspector himself would employ helpers or assistants which he would need. And for the service the inspector would render the dealer a bill charging at the rate of fifty cents a thousand feet of lumber inspected, and would himself pay his helpers from the money received in payment. To the bureau of the exchange, members would make an additional payment of ten cents per thousand feet inspected, by way of contributing to the expenses of maintaining the bureau. The inspectors used were not listed as employees on the pay rolls of Thomas A. Myers & Company, but were referred to in the books only on an "inspection account" as it was called. When the work of inspection in any one instance was finished, the inspector would report to the manager of the bureau, and render himself eligible for the next call by any member. There was an account of an inspector's earnings kept at the bureau, but nowhere else. An inspector has in the past received in a year from inspections for members of the exchange an aggregate amount of as much as $2,000 or $3,000.

Evidence was offered to show that, when in 1925 the commission had decided that an inspector used in this system was an employee of a dealer using him, several members of the exchange, including Thomas A. Myers & Company, had their compensation insurance made to cover disabilities to inspectors and their assistants. And on appeal below exceptions were taken to rulings on the evidence referring to this fact. It appears, too, that Thomas A. Myers & Company reported the accident to Barnes as one to an employee.

The facts stated were all adduced from witnesses called by the claimant, and are uncontroverted, and the question to be answered upon this settled state of facts, What legal princi-

ples apply to persons standing in that given situation? was a question of law. "The terms and manner of employment were, of course, matters of fact for the jury; it being for the court to declare the legal relation that existed between the parties, upon any given state of facts." *Deford v. State, use of Keyser,* 30 Md. 179, 204; *Hygeia Ice Co. v. Schaeffer,* 152 Md. 231, 235, 136 A. 548; *Rawson v. Jones-Winifrede Co.,* 100 W. Va. 263, 130 S. E. 492. The terms and manner of employment being settled for the court in this instance, there was no issue of fact to be answered by a jury; it was for the court to declare the resulting relation. This must be so in a proceeding in which a reversal or modification of the commission's order is sought, as well as in any ordinary civil proceeding, for even though, by the provision in section 56, the decision of the commission is taken as *prima facie* correct, with the burden of proof cast upon the party attacking it, that decision cannot have an effect to change in any degree the legal principles which bear upon a settled, undisputed situation. There can be no such thing as a burden of proving legal principles. *Beyer v. Decker,* 159 Md. 289, 291, 150 A. 804; *Gunter v. Sharp & Dohme,* 159 Md. 438, 445, 151 A. 134.

And the fact of the extension of the insurance to cover the inspectors as employees, after the decision in the earlier case, could have no effect to modify the result of the facts which would otherwise fix the actual relationship. The insurance could not be interpreted as more than cautionary; and, even if it could be taken as an admission of legal liability, it would not be binding, once the question has come before the court. "The application for the policy and its issuance could not be given the effect of supporting the claim here asserted. The insurance, was obtained as a measure of precaution to protect the appellant against any liability to which he might be subject under the Workmen's Compensation Act or otherwise by law. It could not extend the scope of the act or create, as between the insured and his employees, a liability which the law did not impose." *Clement v. Minning,* 157 Md. 200, 203, 145 A. 485, 486. "The evidence offered in the

first bill of exceptions, as to the declarations * * * made a few days after the theft, to the effect that he considered himself responsible to the plaintiff for the loss of the bonds, was also properly rejected. His opinion or belief in regard to his liability did not affect it the one way or the other." *Schermer v. Neurath,* 54 Md. 491, 498; *Western Indemnity Co. v. Industrial Accident Commn.,* 172 Cal. 766, 158 P. 1033.

This court concurs in the conclusion of the trial court that, in the admitted situation of the parties, the claimant in doing the work of inspection stood in the relation of an independent contractor. It appears that there was an independent occupation or calling of inspection of lumber, and the claimant here has been, as he says, a lumber inspector for forty-five years. He undertakes the inspection of lots of lumber, as he is called by the dealers, upon occasion, through the joint agency of the exchange bureau. Hé is in the service of a dealer for only a single, specific job of inspection at a time. He has employees of his own, whom he selects, controls, and pays; and apparently their identity and their pay are in no respect the concern of the dealer. The inspector renders a bill for each such service, at a unit rate for lumber inspected. The only instructions given by the dealer appear to be designations of the work to be done; the inspector, according to the evidence, knows more about the work than the dealer does, and inspects in his own way. The presence of an agent of the dealer in this instance, and his designation of the work to be done, did not place the inspector under the control of the dealer for the work to such an extent as to render the latter an employee. *Scheer v. Melville,* 279 Pa. 401, 404, 123 A. 853; *Stephens v. Industrial Accident Commn.,* 191 Cal. 261, 215 P. 1025. All independent contractors must be given designations of the work to be done, or of the result to be accomplished. The facts seem to this court to place the present claimant in a position analogous to that of any other independent or professional man or expert, called upon occasion. In the case of *Callan v. Hample,* 73 Mont. 321, 324, 236 P. 550, 551, an expert accountant was held to be an independent contractor. "The character and effect of the

employment of an expert accountant," said the court, "does not differ materially from the employment of a doctor, a lawyer, or other professional man. He is retained to perform services requiring his personal skill and technical knowledge not common to the one employing him, and therefore to proceed with the work in accordance with his own methods and ideas without being subject to direction or orders from his employer as to details. Such an employment does not constitute the relation of master and servant, and is not governed by the rules applicable to such relation." And see *Bogatsky v. Swerdlin*, 152 Md. 18, 135 A. 416; *North Chesapeake Beach Land etc. Co. v. Cochran*, 156 Md. 524, 144 A. 505; *Deford v. State, use of Keyser, supra; Zoltowski v. Lumber Co.*, 214 Mich. 231, 183 N. W. 11; *Franklin Coal & Coke Co. v. Industrial Commission*, 296 Ill. 329, 129 N. E. 811; *Storm v. Thompson*, 185 Iowa, 309, 170 N. W. 403. And see decisions collected and reviewed in note, 19 *A. L. R.* 1168, etc.

Our conclusion has been reached upon a consideration of all the evidence offered, treating it all as admitted; and there is no need of discussing exceptions taken to three rulings excluding evidence from the consideration of the jury. Principles on which a decision has been asked for the guidance of the trial courts have been discussed in the case of the *Waddell George's Creek Coal Co. v. Chisholm*, 163 Md. 49, 161 A. 276, decided earlier at this term of court.

*Judgment affirmed, with costs.*